SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 45
----------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

      -against-                                  Ind. No. 1402/13

ANTHONY BLUE,
                  Defendant.
----------------------------------------x
For the People: Erica O'Brien and Marissa Darden
Anthony Blue, pro se
Karen Funk, legal adviser
JUSTICE BRUCE ALLEN :

      A *Dunaway/Mapp* hearing was held before me on March 20, 2014 . The hearing was limited to the evidence which was recovered from the defendant's person at the time of arrest. Two witnesses testified: Detective Andre Williams and Sergeant Jolt Mena of the New York Police Department. I found each to be credible.

*Findings of Fact*

      In the spring of 2012, Detective Williams was assigned to investigate a series of burglaries of residential apartments in the 33rd precinct between West 161st and West 177th streets. The burglaries were referred to as Pattern 36. The police considered them to be pattern crimes because they shared certain characteristics. They were carried out in the daytime while the occupants were away and the apartments were entered by means of a lock pick. Williams testified that the use of a lock pick for burglaries was uncommon in the precinct. A total of 17 burglaries were considered to be part of the pattern.

      One of the burglaries took place on June 1, 2012 at 630 W. 172nd Street. Surveillance

video showed two men lingering together outside the building that day: an hispanic man and a heavyset black man wearing a fedora and a vest. Surveillance video retrieved with respect to a burglary on June 19, 2012 at 640 W. 170th Street showed a similar-looking man in a fedora and vest outside that building. A superintendent of the building at which one of the burglaries took place gave a similar description of two men he had seen on the day of the burglary.

Using the June 1 video, Detective Williams made up a wanted poster. The poster described one suspect as a male black, heavy set, 5'5" to 5'8", wearing a fedora, white shirt, and vest, and the other as a black or hispanic man. The poster was circulated in the 33rd precinct.

Sgt. Mena was assigned to oversee burglary and robbery cases in the 33rd precinct. On August 27, 2012, after reviewing the Pattern 36 reports and the wanted poster, he decided to canvass the area to see if he could find the suspects. At 165th and Broadway, he saw two men crossing the street together. One of the men was a black man wearing a fedora, black vest, and white shirt. In court, Mena identified that man as the defendant.

The two men walked to a parked car. The defendant opened the driver side door, leaned in, and then shut the door. The two men walked west on 164th Street. Mena drove around the block. He saw the defendant going up some stairs in the courtyard of a building at 615 W. 164th. Mena circled the block again. He saw the defendant leaning against a pillar in front of the building. Mena parked his car and called for other officers to assist him.

When other officers arrived, Mena walked up to the defendant and showed him his shield. He asked the defendant to put down a cell phone the defendant was looking at. He asked the defendant what he was doing. The defendant said that he was waiting for a woman friend with whom he was going to have sex. Mena asked the defendant what her name was and what number apartment she lived in. The defendant said that he did not know.

The other man, co-defendant Puello, came out of the building. Mena had the other officers stop him. Mena asked Puello what he was doing in the building. Puello said that he was going to see a woman. He too could not give a name or apartment number. Mena asked each of the men if they knew each other. Each denied knowing the other man. One of the officers opened a bag that Puello was carrying. Inside the bag were gloves, stickers, a wallet, a cell phone, and a lock pick. Mena and Williams both testified that stickers and gloves had been used in pattern burglaries.

The two men were handcuffed and taken to the 33rd precinct. Detective Williams processed the arrest. In addition to the items found in Puello's bag, the defendant's wallet and cell phone were recovered. Subsequent searches of the car and of the defendant's residence led to the recovery of additional evidence.

*Conclusions of Law*

The wanted poster described two men who had been observed or caught on video lingering at several buildings in whichrecent burglaries had been carried out. On seeing the defendant, who matched the distinct description of one of the men, lingering in front of a building, Sgt. Mena had a founded suspicion that criminality was afoot. He was thus justified in approaching the defendant and asking pointed questions. People v. Hollman, 79 NY2d 181; People v. James, 261 AD2d 202 (1st Dept 1999).

While Sgt. Mena testified that he would not have let the defendant leave once he falsely denied knowing Puello, the defendant was not forcibly detained until after the items had been found in Puello's bag. The defendant has no standing to challenge the search of the bag. People v. Wesley, 73 NY2d 351; People v. Dawson, 269 AD2d 817 (4th Dept 2000). The totality of the

circumstances - that Mena had seen the two men together, that the defendant matched the description on the wanted poster, that the two had given false and evasive answers, and that Puello was carrying items used in burglaries, including a lock pick, was sufficient to give Mena probable cause to arrest the men for the June 1 and June 19 burglaries. The property recovered at the scene from the defendant's person was found pursuant to a valid search incident to the arrest. People v. Gokey, 60 NY2d 309.

    Accordingly, the motion to suppress is denied.

April 3, 2014