SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32
-------------------------------------------------------------x
PEOPLE OF THE STATE OF NEW YORK

    -against-

ANTHONY BLUE and CARNONA
PUELLO,

                  Defendants.
-------------------------------------------------------------x

**DECISION AND ORDER**

Indictment No.1402/2010

JUSTICE GREGORY CARRO

    Defendants Anthony Blue and Carnona Puello are charged jointly with six counts of burglary in the second degree based on evidence recovered under a search warrant authorizing a search of Apt. 6A located at 1 East 198th Street (target apartment), a search warrant authorizing a search of a 2000 Chrysler Sebring, New York Plate FRA3700 (target vehicle), and a search warrant authorizing searches of two cellular telephones, one a T-Mobile Samsung cellular telephone recovered from Blue (target cellphone #1), and the second, a Verizon Samsung cellular telephone recovered from Puello (target cellphone #2).

    Blue moves to suppress property recovered from the target premises, the target vehicle and target cellphone #1, and Carnona moves to suppress evidence recovered from target cellphone #2. In identical supporting affirmations, each defendant alleges that the evidence must be suppressed because the warrants were based on evidence that was obtained illegally by police in connection with their arrest for trespass on August 27, 2012. They claim specifically that criminal court dismissed the trespass charge in March, 2013 after it determined that their arrest was without probable cause.[1]

---

[1] Inexplicably, in the same affirmations defense counsels also contradict this assertion and allege that the trespass charge was dismissed "as the People failed to prosecute this arrest."

1

The People have responded in *pro forma* terms.

The search warrant for the target premises was issued by Justice Lewis Bart Stone on August 28, 2012 on an affidavit by Detective Adam Tegan. The search warrant for the target vehicle was issued by Judge Matthew Sciarrino, Jr. on August 28, 2012 on an affidavit by Detective Andre Williams that contains information that is virtually identical to the information in the Tegan affidavit. The search warrant for the target cellphones was issued by Judge Abraham Clott on September 5, 2012 on an affidavit by Andre Williams that incorporates his affidavit in support of the warrant for the target vehicle.  The search warrants for the target premises and vehicle authorize a search for, among other property, small, thin, metal strips that can be used to pick locks and specified property taken during various burglaries.

The affidavits set forth similar information supplied by Sergeant Jolt Mena, and Detectives Williams, Tegan, Denny Acosta, Robert Yarbrough and Michael Morales, all from the 33rd Precinct, and by a building superintendent.

Sgt. Mena and the 33rd Precinct Detectives were investigating a string of 14 burglaries that took place at various locations in the Precinct. Each crime took place in a large apartment building in early afternoon, and the perpetrators used a pick to open and disable the lock on the apartment doors, and stole electronics, jewelry, perfume and sometimes papers.

Det. Williams and Sgt. Mena reviewed video from three of the fourteen burglaries which showed two men working together, one dark-skinned, heavy, dressed in a white shirt, black vest and fedora, and the other older, muscular, dressed casually in a baseball cap. A superintendent from one building reported seeing a heavy man dressed in a white shirt, black vest and fedora.

On August 27, 2012, Sgt. Mena saw two men, later identified as defendants, walking south on Broadway from 165th Street to 164th Street. Blue, who was wearing a white shirt, black vest and fedora, dropped an object into the target vehicle, then followed Puello as he turned onto 164th Street and into the courtyard at 615 West 164th Street. Both men entered the building in which "No Trespassing" signs were posted. Then, Blue

exited. Sgt. Mena notified Det. Yarbrough, who stopped Blue.

Blue told Det. Yarbrough that he was there to visit "Kisha," but was unable to provide her last name, phone number or apartment. Puello, who exited the building while Det. Yarbrough was questioning Blue, denied knowing Blue, but stated that he went to the building to have sex with "Maria," whom he met two days ago. Blue could not provide Maria's last name or phone number. Det. Yarborough arrested both defendants for trespassing. Incident to the arrest, he searched Puello and recovered a piece of thin metal. Target cellphone #1 was recovered from Blue and target cellphone #2 was recovered from Puello.

On the same day, Det. Acosta interviewed Tasha Tulle, a resident of 615 West 164th Street, who reported that she could not gain entry to her apartment because an object was lodged in the lock.

Det. Williams discovered that the target vehicle was registered to Blue whose driver's license bore the address of the target premises. Det. Morales observed a pair of rubber gloves in the target vehicle.

Det. Tegan also located an arrest photo of Blue from April 29, 2012 and observed that he was wearing a white shirt, tie and vest.

After their arrest, Det. Williams interviewed both defendants. Puello admitted that he entered 615 West 164th Street to commit a burglary but was unable to enter the apartment. He also admitted that he knew Blue from the Bronx. Blue stated that he currently lived at the target premises.

At the outset the court rejects the defendants' claim that the warrants were based on evidence recovered illegally by police incident to the arrest for trespass. Evidence recovered pursuant to a search warrant that is based solely on evidence obtained by means of unlawful search and seizure is the fruit of the poisonous tree, and may not be used against the defendant at trial (CPL 710.20[4]; 710.20[1]). Here, however, a review of the criminal court file reveals that the accusatory instrument charging the defendants with attempt to commit burglary in the second degree on August 27, 2012 was dismissed on the ground that they were denied their right to a speedy trial, a ground unrelated to police

illegality. Consequently, the exclusionary rule is not applicable here (*People v Arnau,* 58 NY2d 27, 32 [1982]).

A court may issue a search warrant if it is satisfied that there is reasonable cause to believe that "seizable property" may be found at the place designated in the application (CPL 690.10[4]; 690.40 [2]). As relevant here, "seizable property" is personal property that is stolen or constitutes evidence of an offense, or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense (CPL 690.10 [1] [4]).

In deciding whether reasonable cause exists, search warrant applications "should not be read in a hypertechnical manner as if they were entries in an essay contest. On the contrary, they must be considered in the clear light of everyday experience and accorded all reasonable inferences" (*People v Hanlon,* 36 NY2d 549, 559 [1975]). On a motion to suppress tangible property recovered pursuant to a search warrant, a presumption of validity attaches to a search warrant, which has already been tested by the issuing judge. The suppression court must resolve the simple question whether the issuing judge could reasonably have concluded that probable cause existed (*People v Castillo,* 80 NY2d 578, 585 [1992]).

Considering all the information contained in the search warrant applications, there was ample reason to conclude that there was reasonable cause to connect both defendants with at least three of the series of residential burglaries that took place within the 33rd Precinct and with the Tulle incident.

Detectives in the Precinct were aware that all the burglaries shared a unique feature, the perpetrators used a pick to disengage the lock on the apartment doors. Detectives also learned from surveillance video and from a witness that three of the burglaries were committed by two men working together. One was a dark skinned, heavy man wearing a distinctive fedora, white shirt and black vest.

Blue was wearing that identical, unusual clothing when Sgt. Mena encountered him outside Tulle's building on August 27. Sgt. Mena observed Puello walk into the courtyard at 615 West 164th Street, followed by Blue. He then saw Blue exit the building.

4

When questioned, both defendants gave police evasive answers that could reasonably be viewed as evincing a lack of legitimate reason for being in the building. In addition, Puello denied knowing Blue, which seemed at odds with Sgt. Mena's observations and with surveillance video, which suggested that the defendants' conduct was coordinated. Once Sgt. Mena recovered the metal strip from Puello, who also admitted that he knew Blue, there was reasonable cause to believe that both were responsible not just for the attempted entry into Tulle's apartment in the same building, but also for three burglaries which were associated with surveillance video.

Blue's driver's license issued one month before the attempted burglary which bore the address of the target premises, and information which he provided to Det. Williams after he was arrested provide reasonable cause to believe that at the time the search warrant was issued, Blue lived at the target premises.

The application must provide facts and circumstances generating a substantial probability, not proof beyond a reasonable doubt, that "seizable property" may be found at the place searched (*People v Glen,* 30 NY2d 252 [1972]). Considering the type of items taken from the burglarized apartments, such as electronics, jewelry, perfume and some personal papers, and the identification of the target premises as the defendant's residence, "it was entirely reasonable to deduce" that the items sought would be found there (*People v Robinson,* (68 NY2d 541, 551-552 [1986], *quoting People v Wheatman,* 29 NY2d 337, 346).

Sgt. Mena and Det. Williams saw the registration for the target vehicle which identified the owner as Blue. In addition,, Sgt. Mena observed Blue access the vehicle immediately before entering 615 West 164th Street. Further, Det. Morales observed rubber gloves in the vehicle, items which can reasonably be viewed as tools for concealing the defendants' crimes. On this information and on all the other information contained in the Williams affidavit, it is reasonable to deduce that items such as those stolen from the burglarized apartments may be found in the target vehicle (*Robinson* at 551-552 )

Turning finally to the search warrant for the target cellphones, Det. Williams

alleged in his affidavit that based on his training and experience with cellphones, the target cellphones may contain information about defendants' activities and associates in connection with multiple burglaries in the Precinct. Considering evidence that the defendants were working together in the commission of the burglaries and the attempted burglary, and that, therefore, they had to consult before, during and after their criminal activity, Judge Clott could reasonably have concluded that the target cellphones may contain evidence of their joint participation in the commission and attempted commission of burglary.

The search warrant for the target premises also authorizes a search for marijuana and related paraphernalia based on information in the Tegan affidavit supplied by Detective Bernard Solomon of Narcotic Boro Manhattan North and a confidential informant who made a "controlled buy" in the target apartment. Because the court finds that there was reasonable cause to issue the search warrant for the target premises, Blue's argument that the People improperly "boot-strapped" the marijuana-related information is not compelling. In any case, since no marijuana or related evidence was recovered pursuant to this search warrant, his claim that the application does not establish the confidential informant's reliability is academic.

For these reasons, Blue's motion to suppress evidence recovered under three search warrants is denied. Puello's motion to suppress evidence recovered from target cellphone #2 is also denied.

This constitutes the decision and order of the court.

**DATED:** November 13, 2013

      **New York, N.Y.**

                                                                                             **JUSTICE, SUPREME COURT**