USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___6/4/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                        :

ANTHONY BLUE,                 :
                        :

             Plaintiff,    :

                        :

        -against-       :

                        :

THE CITY OF NEW YORK, CYRUS R.  :
VANCE, JR., and ERICA O'BRIEN,  :
                        :

             Defendants.  :
----------------------------------------------------------X

16-CV-9990 (VSB)

**OPINION & ORDER**

Appearances:

Anthony Blue
*Pro se Plaintiff*

Morgan Chmiel McKinney
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Anthony Blue brings this pro se action pursuant to 42 U.S.C. §§ 1983 and 1985 against the City of New York (the "City"), Police Officer Andre Williams (together with the City, the "City Defendants"), District Attorney Cyrus Vance, Jr., and Assistant District Attorney Erica O'Brian (the "DA Defendants," and collectively with the City Defendants, "Defendants"), alleging malicious prosecution, denial of his right to a fair trial, abuse of process, failure to intervene, conspiracy, and municipal liability, as well as numerous New York state law claims. Before me are motions to dismiss filed by the City Defendants and the DA Defendants. Because I find that Plaintiff's allegations are insufficient to survive a motion to dismiss, both the DA Defendants' and City Defendants' motions to dismiss Plaintiff's federal claims, as well as state

law claims analyzed under the same legal standard, are granted and these claims are dismissed with prejudice because amendment would be futile.  To the extent that Plaintiff's factual allegations can be construed to make out additional state law claims, I decline to exercise jurisdiction over these claims and they are also dismissed.

## I.     __Background__[1]

On August 27, 2012, at or about 2:25 p.m., Plaintiff was arrested by Williams on the sidewalk at 615 West 164th Street, New York, New York.  (SAC ¶¶ 14–15.)[2]  He was then transported by patrol car to the 33rd Precinct of the New York City Police Department ("NYPD").  (*Id.* ¶ 16.)  Once he arrived at the Precinct, Plaintiff was confined to a holding cell on the second floor.  (*Id.* ¶ 17.)   From the cell, he saw Williams and another police officer talking in the conference room adjacent to the cell.  (*See id.* ¶ 18.)

The next day, August 28, 2012, Plaintiff observed Williams and other NYPD officers participating in a conference call with Vance and O'Brien.  (*Id.* ¶ 20.)  Plaintiff believes Vance and O'Brien instructed Williams to obtain a search warrant for Plaintiff's automobile and told Williams and the other officers to search Plaintiff's apartment.  (*See id.* ¶¶ 20–21.)  That night, Plaintiff observed Williams engage in a speaker phone conversation with Vance and O'Brien. (*Id.* ¶ 22.)  According to Plaintiff, during this phone conversation Vance, O'Brien, and Williams discussed and drafted a search affidavit alleging that Plaintiff was involved in a "drug buy and bust operation" and that Plaintiff had drugs and a gun in his apartment.  (*Id.*)  Plaintiff was confined in his holding cell in the 33rd Precinct for over thirty-six hours.  (*Id.* ¶ 23.)

_____

[1] The following factual summary is drawn from the allegations of Plaintiff's second amended complaint, filed August 15, 2017 ("Second Amended Complaint"), which I assume to be true for the purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "SAC" refers to the Second Amended Complaint.  (Doc. 40.)

Williams and other NYPD officers searched Plaintiff's apartment and informed Vance and O'Brien that through this search they obtained jewelry, electronics, documents, and other miscellaneous items. (*Id.* ¶ 24.) Plaintiff believes that O'Brien then instructed Williams and another NYPD officer to draft false documents stating that a laptop and other items were recovered from Plaintiff's apartment and requested that they forward the items to the New York County District Attorney's Office. (*Id.* ¶ 25.) On or about August 29, 2012 at 11:00 a.m., Plaintiff was arraigned on the charge of attempted burglary. (*Id.* ¶ 28.) Bail was set at $40,000, but because he could not pay, Plaintiff stayed in the New York City Department of Corrections. (*Id.* ¶ 29.)

Plaintiff was released on his own recognizance on August 31, 2012, and later that same day was arrested again at the direction of Vance and O'Brien. (*Id.* ¶ 30.) Plaintiff was taken to the 33rd Precinct and detained in a holding cell. (*Id.* ¶ 31.) At about 8:00 p.m., Plaintiff alleges he observed Williams and O'Brien engage in several speaker phone conversations in which they conspired to falsify documents and a felony complaint to charge Plaintiff with possession of stolen property. (*Id.* ¶ 32.) On September 1, 2012, Plaintiff was arraigned in Bronx County on the charge of possession of stolen property. (*Id.* ¶ 34.) Plaintiff also alleges that on or about September 16, 2012, he filed a complaint with the NYPD's Internal Affairs Bureau regarding Williams's interactions with Vance and O'Brien, but that the NYPD did not respond or investigate his complaint. (*Id.* ¶ 35.)

On or about March of 2013, a grand jury proceeding took place in which, according to Plaintiff, Williams gave false testimony that "he investigated an alleged burglary on June 5, 2012 and recovered a laptop" which was "taken from [Plaintiff's] home."[3] (*Id.* ¶ 37.) On March 25,

---

[3] Plaintiff alleges that during the grand jury proceeding Williams and an additional NYPD officer gave false testimony at the behest of Vance and O'Brien. (SAC ¶¶ 37–38.) Plaintiff also claims that the charge of attempted

2013, an indictment charging plaintiff with six counts of burglary was filed in New York County ("Indictment").[4]  (*Id.* ¶ 43; *see also* McKinney Decl. Ex. B.)  Specifically, the Indictment charged Plaintiff with six separate burglaries occurring on May 15, June 1, June 5, June 12, June 13, and June 19 of 2012.  (*See* McKinney Decl. Ex. B.)  Pursuant to this Indictment, Plaintiff was again arrested on or about May 15, 2013.  (SAC ¶ 45.)  Because Plaintiff was arrested in another state, he was transported to New York for his appearance in New York County Supreme Court.[5]  (*Id.* ¶ 46.)  Subsequently, Plaintiff moved to suppress certain physical evidence recovered from the searches and to dismiss the Indictment because it was based on evidence fabricated by Vance, O'Brien, and Williams, amongst others.  (*See* Edelman-Reyes Decl. Ex. 10.)[6]  Plaintiff alleges that Williams and other NYPD officers gave false testimony both during the suppression hearing conducted pursuant to *Dunaway/Mapp* and later during Plaintiff's jury trial.  (SAC ¶¶ 50–54.)  The jury trial commenced on October 1, 2015, and on October 15, 2015, a jury found Plaintiff guilty with respect to five of the six counts and not guilty with respect to the June 5,

---

burglary was dismissed by the grand jury and sealed in his favor, (*id.* ¶ 39), but then subsequently, when Plaintiff threatened to file a suit against them, Vance and O'Brien retaliated against him by manufacturing a fraudulent indictment to charge Plaintiff with the six burglaries, (*id.* ¶¶ 40–43).

[4] Plaintiff alleges that the court "issued an unauthorized nonexistent grand jury warrant without a judge's permission causing plaintiff to be arrested."  (SAC ¶ 45.)  Because on a motion to dismiss pursuant to Rule 12(b)(6) I may consider a document incorporated by reference into a complaint if that document is "integral to the complaint" in the sense that "a plaintiff has relied on the terms and effect of a document in drafting the complaint," *see Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotation marks omitted), I will consider the Indictment, (*see* McKinney Decl. Ex. B).  "McKinney Decl." refers to the Declaration of Morgan C. McKinney in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b), filed September 29, 2017.  (Doc. 50.)

[5] Plaintiff alleges that Vance and O'Brien continued to mislead the state court because they "knew they were acting outside of their jurisdiction and that no court impaneled a grand jury to vote on the bogus charges," but nonetheless submitted Williams's "false testimony grand jury minutes from the previous case that was dismissed and sealed, causing the court and plaintiff to believe that a grand jury had in fact indicted plaintiff on the false charges manufacture[d] in the fraudulent indictment filed by the defendants."  (SAC ¶¶ 48–49.)

[6] "Edelman-Reyes Decl." refers to the Declaration of Karen Edelman-Reyes in Support of the DA Defendants' Motion to Dismiss, filed September 28, 2017.  (Doc. 45.)  I take judicial notice of the documents filed in the state court proceeding but do not make any determination as to the truth of the matters asserted therein.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

2012 Burglary count (the "June 5 Burglary"). (*See id.* ¶ 55.)

## II. <u>Procedural History</u>

Plaintiff filed his complaint in this action on December 28, 2016 (the "Complaint"). (Doc. 2.) On June 16, 2017, the DA Defendants filed a motion to dismiss the Complaint. (Docs. 18–22.) On July 6, 2017, in response to the DA Defendants' motion to dismiss, Plaintiff filed an amended complaint (the "First Amended Complaint"), (Doc. 27), as well as a declaration in opposition to the DA Defendants' motion to dismiss, (Doc. 26). The DA Defendants filed a motion to dismiss the First Amended Complaint on July 24, 2017. (Doc. 29–33.) Plaintiff then filed the Second Amended Complaint on August 15, 2017. (Doc. 40.) On September 28, 2017, DA Defendants filed their motion to dismiss the Second Amended Complaint, together with their memorandum of law and supporting declaration. (Docs. 44–46.) The next day, September 29, 2017, the City filed a motion to dismiss the Second Amended Complaint, along with their memorandum of law and supporting declaration.[7] (Docs. 49–51.) Plaintiff filed his opposition to both the DA Defendants' and City Defendants' motions to dismiss along with a supporting declaration on October 20, 2017. (Docs. 53–54.) The DA Defendants filed their reply on November 8, 2017, (Doc. 57), and the City Defendants filed their reply on November 17, 2017, (Doc. 62).

## III. <u>Legal Standards</u>

### A. *Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

---

[7] Although Williams was named as a Defendant in the Second Amended Complaint, he had not yet been served at the time that Plaintiff filed his Second Amended Complaint. (*See* Doc. 60, at 1.) However, by letter dated November 15, 2017, counsel for the City informed me that it would also represent Williams in the instant action, and requested that I deem the City Defendants' motion to dismiss as Williams' response to the Second Amended Complaint. (*Id.*) I thus consider the City's motion to dismiss as the City Defendants' motion to dismiss, and will refer to this motion as the City Defendants' motion to dismiss for the remainder of this Opinion and Order.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). In considering a motion to dismiss, a court may also "consider matters of which judicial notice may be taken under Fed.R.Evid. 201, including public records such as arrest reports, indictments, and criminal disposition data." *Smith v. City of New York*, No. 12 Civ. 4572(KPF), 2013 WL 6158485, at *1 (S.D.N.Y. Nov. 25, 2013). "If a court

takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment." *Jones v. Rivera*, No. 13-cv-1042 (NSR), 2015 WL 8362766, at *3 (S.D.N.Y. Dec. 7, 2015) (quoting *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013)).

### B.    *Section 1983*

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015). Further, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

### C.    *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. <u>Discussion</u>

Plaintiff brings § 1983 and New York law claims against the City Defendants and DA Defendants for malicious prosecution, denial of a right to a fair trial, abuse of process, conspiracy, and failure to intervene. (*See generally* SAC.) Plaintiff also brings claims for conspiracy pursuant to 42 U.S.C. § 1985 and municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See id.*) All of Plaintiff's clams stem from his arrest and subsequent prosecution with regard to the June 5 Burglary. I consider each claim in turn below.

### A. *Malicious Prosecution*

#### 1. **Applicable Law**

To state a malicious prosecution claim under § 1983, a plaintiff must allege the elements of a state-law malicious prosecution claim. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). The elements of malicious prosecution are: (1) the initiation of a prosecution against a plaintiff; (2) without probable cause; (3) begun with malice; and (4) resulting in a termination in the plaintiff's favor. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996).

In actions brought pursuant to § 1983, a plaintiff must also have suffered a sufficient post-arraignment deprivation of liberty implicating his Fourth Amendment rights. *See Jocks v.*

*Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) ("Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim . . . ."); *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000) ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995))). Thus, "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 439 (S.D.N.Y. 2010) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

### a. Prosecutorial Immunity

Although the text of § 1983 does not include language with respect to immunities, "the Supreme Court has ruled that 'Congress did not intend § 1983 to abrogate immunities well grounded in history and reason.'" *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). This includes prosecutorial immunity, which grants absolute immunity for state prosecutors and "creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney." *Id.* Under this doctrine, "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citations and internal quotation marks omitted); *see also Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are

9

absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case insofar as that conduct is intimately associated with the judicial phase of the criminal process." (citations and internal quotation marks omitted)).  The doctrine of absolute immunity for prosecutors is in place in order to ensure public trust in the prosecutor's office—"public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Shmueli*, 424 F.3d at 237.

A prosecutor's immunity is expansive, and as long as a prosecutor's conduct implicates the official prosecutorial function (*i.e.*, the initiation and pursuit of a criminal prosecution or any "prosecutorial activities intimately associated with the judicial phase of the criminal process"), and the prosecutor has a colorable claim of authority (*i.e.*, the prosecution is within that prosecutor's jurisdiction), absolute immunity will attach.  *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).  "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate," and this immunity would "even include . . . allegedly conspiring to present false evidence at a criminal trial."  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also Shmueli*, 424 F.3d at 237 (stating that prosecutors are entitled to absolute immunity even when conduct would be "reprehensible," including where there are allegations of knowing use of perjured testimony or deliberate withholding of exculpatory information).  "[I]nvestigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution . . . are shielded by absolute immunity when done by prosecutors."  *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).

The absolute immunity accorded to prosecutors protecting them from malicious

prosecution claims under § 1983 also protect them from malicious prosecution claims under New York law. *See Shmueli*, 424 F.3d at 238; *see also Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). Thus, if absolute immunity is conferred with respect to a § 1983 claim, the prosecutor is entitled to the same immunity for a New York state law claim.

b. Probable Cause

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (internal citation and quotation marks omitted). This presumption may only be rebutted by "evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (quoting *Savino*, 331 F.3d at 72). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Savino*, 331 F.3d at 73. Thus, at the motion to dismiss stage, a plaintiff must plausibly allege that his indictment was procured through bad-faith police conduct. *See, e.g.*, *Manganiello*, 612 F.3d at 162 (finding that an indictment was secured through bad faith or perjury where there is "some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment" (internal quotation marks omitted)); *Smalls v. City of New York*, 181 F. Supp. 3d 178, 187 (E.D.N.Y. 2016) (finding that although the plaintiff would likely need "more than bald assertions of perjury and fraud to survive summary judgment" the allegations in the complaint that a police officer "filed an accusatory instrument against him and fabricated grand jury testimony" is enough to survive a motion to dismiss).

## 2. Application

### a. DA Defendants

Here, Plaintiff brings claims against the DA Defendants under both § 1983 and state law for malicious prosecution with respect to the June 5 Burglary. More specifically, Plaintiff brings claims against Vance and O'Brien for malicious prosecution based on their "commencement and continued prosecution of the illegal judicial proceeding against plaintiff, including the arrest, imprisonment, post deprivation of liberty, and false charges against plaintiff" for the June 5 Burglary. (SAC ¶ 65.)

This, however, describes only "prosecutorial activities intimately associated with the judicial phase of the criminal process," *Barr*, 810 F.2d at 361, or those that are "associated with [the prosecutor's] function as an advocate," *Dory*, 25 F.3d at 83. The DA Defendants' alleged discussions with Williams all took place after Plaintiff's arrest and in connection with the prosecution of the six burglary counts in the Indictment. (*See id.* ¶¶ 15–55.) In addition, the DA Defendants had jurisdiction to prosecute Plaintiff for the burglaries pursuant to New York state statutes, as the burglaries all occurred within New York. Thus, even if the DA Defendants did, among other things, "manufacture[] false testimony, statements, evidence and documents" during Plaintiff's prosecution, (*id.* ¶ 55), absolute immunity would attach to the DA Defendants' actions. Therefore, Plaintiff's federal and state malicious prosecution claims against the DA Defendants are dismissed, as the DA Defendants are entitled to absolute prosecutorial immunity.

### b. City Defendants

Plaintiff also brings a claim against Williams for malicious prosecution based on the "commencement and continued prosecution of the illegal judicial proceeding against plaintiff, including the arrest, imprisonment, post deprivation of liberty, and false charges against

plaintiff" for his June 5 Burglary charge.  (SAC ¶ 65.)  The City Defendants argue that this claim must be dismissed because Plaintiff has failed to sufficiently allege the elements of malicious prosecution claim under § 1983 and New York law.  (*See* City Defs.' Mem. 5–6.)[8]

As an initial matter, although the indictment by a grand jury creates a presumption of probable cause, *Manganiello*, 612 F.3d at 162, I find that Plaintiff's allegations are sufficient to overcome this presumption at this stage of the proceeding.  If true, Plaintiff's allegations plainly suggest that the Indictment was grounded in false evidence and Williams's perjured testimony.  (*See* SAC ¶¶ 37–38.)  Although Plaintiff will need to provide more than "bald assertions" to survive summary judgment, *Smalls*, 181 F. Supp. 3d at 187, at the motion to dismiss stage he has sufficiently rebutted the presumption of probable cause created by the Indictment.

However, Plaintiff has not established a deprivation of liberty implicating his Fourth Amendment rights.  Because § 1983 is "designed to compensate injuries caused by . . . constitutional deprivation," a plaintiff must sufficiently allege a deprivation of liberty amounting to a constitutional violation in order to make out a malicious prosecution claim. *Singer*, 63 F.3d at 116 (internal quotation marks omitted); *see also Rohman*, 215 F.3d at 215 ("Since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." (quoting *Singer*, 63 F.3d at 116)); *Holmes v. City of New York*, No. 14 CV 5253-LTS-RLE, 2017 WL 519250, at *3 (S.D.N.Y. Feb. 8, 2017) ("[A]n actionable deprivation of liberty must flow from the challenged prosecution, in order to ensure that the malicious prosecution claim is not merely one seeking review of a prosecutorial

---

[8] "City Defs.' Mem." refers to the Memorandum of Law in Support of Defendant City of New York's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b), filed September 29, 2017.  (Doc. 51.)

decision."). Where a plaintiff is required to make court appearances in connection with the criminal charges underlying the malicious prosecution claim, courts have found that the deprivation of liberty element is satisfied. *See Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." (internal quotation marks omitted)); *Rohman*, 215 F.3d at 215–16 (finding that the deprivation of liberty element was satisfied where the plaintiff had to return to court on at least five occasions and was required to "render himself at all times amenable to the orders and processes of the court"). If, however, the court appearances are attributable to other pending criminal charges against the plaintiff, court appearances are not sufficient to make out the necessary post-arraignment deprivation of liberty. *See Coleman v. City of New York*, 688 F. App'x 56, 58 (2d Cir. 2017) (summary order).

Here, although Plaintiff was acquitted for the June 5 Burglary, there is no question that he was convicted on the remaining five burglary charges brought against him in the same proceeding, and that throughout the pendency of the June 5 Burglary charge, he was also in custody pursuant to the other five charges. (*See id.* ¶ 55; *see also* City Defs.' Mem. 6.) Thus, Plaintiff has failed to allege a post-arraignment deprivation of liberty. *See Coleman*, 688 F. App'x at 58 (finding that the "ongoing requirement of appearing in court" was not a sufficient deprivation of liberty when it was "not solely attributable to the . . . charges [in question]" because "[e]ven if [those] charges had never been, [the plaintiff] still would have had the obligation to appear on account of the other criminal charges").

Because even absent the June 5 Burglary charge, Plaintiff would have been required to appear in court on account of the other five charges of which he was convicted, Plaintiff has

failed to show the post-arraignment deprivation of liberty necessary for his malicious prosecution claim against Williams. Accordingly, the City Defendants' motion to dismiss with respect to Plaintiff's federal and state malicious prosecution claims is granted, and these claims are also dismissed.

## B. *Right to a Fair Trial*

### 1. Applicable Law

"It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Harris v. City of New York*, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000)). Thus, a defendant's right to a fair trial is violated "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *see also Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) ("A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."). A defendant whose rights have been violated in such manner may bring an action for damages pursuant to § 1983 for deprivation of a right to a fair trial separate from a claim for malicious prosecution. *See id.*; *see also Nibbs v. City of New York*, 800 F. Supp. 2d 574, 575 (S.D.N.Y. 2011) ("Pursuant to § 1983 and prevailing case law, denial of a right to a fair trial is a separate and distinct cause of action [from malicious prosecution]."). However, "there is no denial of a criminal defendant's right to a fair trial without prejudice to that defendant, i.e., a conviction." *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 472 (S.D.N.Y. 2009).

## 2. Application

Plaintiff alleges that the DA Defendants fabricated evidence and called Williams to the stand to testify falsely in the jury trial, depriving Plaintiff of his right to a fair trial under § 1983. (*See* SAC ¶¶ 52–58.) Specifically, Plaintiff claims that DA Defendants "tampered with alleged evidence by opening an evidence bag and altering a bag belonging to plaintiff's girlfriend by scribbling pen marks to make it appear similar to a complaining victims to influence the jury's decision." (*Id.* ¶ 54.) Further, Plaintiff alleges that Williams forwarded "false documents, statements and evidence" at the instruction of the DA Defendants, (*see id.* ¶ 106), and that both DA Defendants and Williams used these false documents and evidence during his criminal proceeding, (*see id.* ¶ 112).

I find that Plaintiff fails to make out a claim for denial of a right to a fair trial against either the DA Defendants or Williams. Plaintiff's only allegations are generalized and conclusory allegations that Williams "forwarded false documents, statements, and evidence to the New York County D.A.'s Office at the instructions, advice, and behest of [the DA Defendants.]" (*Id.* ¶ 106.) Putting aside the fact that Plaintiff's allegations are generalized and conclusory, even assuming the bag that Plaintiff alleges was falsified was forwarded by Williams to the DA Defendants and presented to the jury, Plaintiff has not plausibly alleged how or why the altered bag would influence the jury's ultimate determination of guilt.[9] Thus, Plaintiff has not plausibly alleged a claim for denial of a right to a fair trial, which requires a "police officer [to] create[] false information likely to influence a jury's decision" and "forward[ing of] that information to prosecutors." *Ricciuti*, 124 F.3d at 130; *see also Davenport*, 2017 WL 4356883,

---

[9] Plaintiff has made no plausible showing that, even assuming it had been forwarded to the DA Defendants, the bag "was material to the prosecutor's case" and thus was likely to influence a jury's decision. *Davenport v. City of New York*, 15-CV-5890 (MKB), 2017 WL 4356883, at *18 (E.D.N.Y. Sept. 28, 2017).

at *18 (finding that a plaintiff's claim for denial of a right to a fair trial failed because "he [did] not present any evidence that [the investigative officer] forwarded incomplete evidence to the District Attorney's Office").

Finally, Plaintiff cannot show that he suffered any deprivation of liberty as a result of his prosecution for the June 5 Burglary because as stated above, Plaintiff was—and would have been—in custody pursuant to his other five burglary charges even absent the charge for the June 5 Burglary. Additionally, Plaintiff acknowledges that he was acquitted of his June 5 Burglary charge. (*See* SAC ¶ 55.) Plaintiff has thus failed to establish a deprivation of liberty as is required for a claim for denial of a right to a fair trial. *See Jovanovic*, 486 F. App'x at 152.

Therefore, both the DA Defendants' and City Defendants' motions to dismiss with respect to Plaintiff's claim for denial of his right to a fair trial are granted, and these claims are dismissed.

### C. *Abuse of Process*

#### 1. Applicable Law

Abuse of process under both § 1983 and New York law requires a defendant to "(1) employ regularly issued legal process to compel performance or forbearance of some act, (2) with the intent to do harm without excuse or justification, (3) in order to obtain a collateral objective beyond the legitimate ends of the process." *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995); *see also Savino*, 331 F.3d at 76.

In order to successfully make out the third prong of an abuse of process claim, the plaintiff must show that "defendants acted with malice or with a collateral objective that was outside the legitimate ends of the legal process," and merely alleging that a defendant lacked probable cause is not enough. *See Savino*, 331 F.3d at 77; *see also Dellutri v. Vill. of Elmsford*,

895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012). "[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution," and there must be a "claim that [the defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77; *see also Coleman*, 585 F. App'x 788 ("[R]etaliation for some offense will not suffice as a collateral motive for the purposes of an abuse of process claim . . . ."). Thus, if a defendant "uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process." *Rodriguez v. Vill. of Sleepy Hollow*, No. 13-CV-8465 (NSR), 2015 WL 4597446, at *8 (S.D.N.Y. July 29, 2015) (quoting *Hauser v. Bartow*, 273 N.Y. 370, 374 (1937)).

## 2. Application

Here, Plaintiff rests his claim regarding abuse of process on the allegation that the DA Defendants and Williams arraigned Plaintiff on false charges, caused him to be held in custody, manufactured a false indictment against him, and elicited false testimony in order to "retaliat[e] against plaintiff for filing complaints against them and to protect themselves from future law suits and loss of their jobs." (SAC ¶¶ 42–43; *see also id.* ¶¶ 91–97.) This is not, however, sufficient for an abuse of process claim, as it does not demonstrate that either Williams or the DA Defendants sought some collateral objective outside of the "legitimate ends of the process." *Dellutri*, 895 F. Supp. 2d at 572 (quoting *Savino*, 331 F.3d at 76). In fact, the Second Circuit in *Savino* specifically stated that alleging that a defendant is seeking to retaliate against a plaintiff is not enough to make out a claim for abuse of process. 331 F.3d at 77 ("[T]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal

prosecution.").  Because the Second Amended Complaint does not allege that Williams or the

DA Defendants used the judicial processes for anything other than their proper purposes, both

the DA Defendants' and City Defendants' motions to dismiss are granted as to Plaintiff's federal

and state abuse of process claims.

### D.    *Conspiracy*

#### 1.  Applicable Law

To prove conspiracy under § 1983, "a plaintiff must show:  (1) an agreement between

two or more state actors or between a state actor and a private entity; (2) to act in concert to

inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

damages."  *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 287 (S.D.N.Y. 2013)

(quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  Moreover, the plaintiff must

prove an "actual violation of constitutional rights"—in other words, "the lawsuit will stand only

insofar as the plaintiff can prove the *sine qua non* of a § 1983 action:  the violation of a federal

right."  *Singer*, 63 F.3d at 119.  In addition, to state a claim for conspiracy pursuant to 42 U.S.C.

§ 1985(3), "a plaintiff must allege:  (1) a conspiracy; (2) the purpose of which was to deprive a

person or class of persons of equal protection of the laws or of equal privileges or immunities

under the law; (3) actions by the defendants in furtherance of the conspiracy; (4) injury to

plaintiff's person or property or deprivation of a right as a result of these actions; and (5) class-

based discriminatory animus."  *Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y.

2007).  A claim under § 1985(3) must be "motivated by 'some racial or perhaps otherwise class-

based, invidious discriminatory animus behind the conspirators' action.'"  *Mian v. Donaldson,*

*Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of*

*Carpenters v. Scott*, 463 U.S. 825, 829 (1983)).

In order to survive a motion to dismiss, § 1983 and § 1985 conspiracy claims must "provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (internal quotation marks omitted). The plaintiff must also allege overt acts in which the defendants engaged to further the agreement, as well as an actual violation of the rights that defendants were alleged to have conspired to violate. *See id.* at 209. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Absolute prosecutorial immunity may shield prosecutors from a claim of conspiracy brought pursuant to § 1983 when they are acting within their role as an advocate. *See Pinaud*, 52 F.3d at 1148 ("[T]hough it may initially seem peculiar to hold that even a conspiracy among prosecutors is shielded by absolute immunity, the fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." (internal quotation marks omitted)). "As this Court and other[] circuits have repeatedly held, since absolute immunity covers virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate, when the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy." *Id.* (citation and internal quotation marks omitted).

Further, even where a plaintiff has adequately alleged the elements of a conspiracy, under the doctrine of intracorporate conspiracy "officers, agents and employees of a single corporate entity are legally incapable of conspiring together" and thus cannot be held liable for conspiracy under § 1985(3) or § 1983.[10]  *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal quotation marks omitted); *see also Randle v. Alexander*, 960 F. Supp. 2d 457, 475 (S.D.N.Y. 2013).  There is an exception to this doctrine, however, where a plaintiff shows that the "individuals are motivated by an independent personal stake in achieving the corporation's objective."  *Little*, 487 F. Supp. 2d at 442.

## 2. Application

Plaintiff alleges that (1) Williams conspired with the DA Defendants to "falsify statements, documents, testimony, affidavits, evidence and information" which was presented to the grand jury, resulting in his arrest, (SAC ¶¶ 117–19); (2) the DA Defendants conspired with each other to fabricate an indictment against him, (*id.* ¶¶ 120–21); (3) Williams conspired with the DA Defendants to arrest Plaintiff on false charges to cover up the fraudulent act of filing a false indictment, (*id.* ¶ 122); and (4) Williams conspired with the DA Defendants to tamper with evidence, therefore depriving him of a fair trial, (*id.* ¶¶ 123–24).  The City Defendants and DA Defendants argue that these claims are either barred by the intracorporate conspiracy doctrine or, in the alternative, that Plaintiff has failed to sufficiently allege the elements of conspiracy.  (*See* DA Defs.' Mem. 16–18; City Defs.' Mem. 10–11.)[11]

---

[10] Although the Second Circuit recognizes this rule in the context of § 1985 conspiracy claims, it has not ruled whether the intracorporate conspiracy doctrine applies to § 1983 claims.  *See Chamberlain*, 986 F. Supp. 2d at 388. Courts in this District, however, have applied the doctrine to bar conspiracy claims brought pursuant to § 1983.  *See id.* ("Several District Courts in the Circuit have addressed the question, however, and have held that the rationale behind the intracorporate conspiracy rule—that there is no conspiracy if the conduct is essentially a single act by agents of a single entity acting with[in] the scope of their employment—applies with equal force in the Section 1983 context."); *Anemone v. Metropolitan Trans. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006) (collecting cases applying the intracorporate conspiracy doctrine to conspiracy claims brought pursuant to § 1983).

[11] "DA Defs.' Mem." refers to the Memorandum of Law in Support of District Attorney Cyrus R. Vance and

As an initial matter, Plaintiff's allegations that the DA Defendants conspired with one another to fabricate an indictment, (SAC ¶¶ 120–21), are dismissed based on absolute prosecutorial immunity, *see Pinaud*, 52 F.3d at 1148, and the intracorporate conspiracy doctrine, *see Hartline*, 546 F.3d at 99 n.3. During the time of the alleged conspiracy, the DA Defendants were acting in their capacity as advocates in connection with their prosecution of the six burglary counts, and thus the DA Defendants are protected by absolute immunity with respect to Plaintiff's § 1983 conspiracy claim. Even assuming the DA Defendants were not entitled to prosecutorial immunity, Plaintiff's § 1983 and § 1985 claims would be barred pursuant to the intracorporate conspiracy doctrine. Vance and O'Brien are both prosecutors in the New York County District Attorney's Office, and thus part of a single corporate entity. *See Hartline*, 546 F.3d at 99 n.3. Further, Plaintiff does not allege any facts that could support an inference that either prosecutor was motivated by an "independent personal stake" in the prosecution, *Little*, 487 F. Supp. 2d at 442, and therefore Plaintiff's claim does not fall under the exception to the intracorporate conspiracy rule. Accordingly, the DA Defendants' motion to dismiss is granted with respect to Plaintiff's claims that the DA Defendants conspired with one another, because the claims are barred by prosecutorial immunity for the § 1983 claim and the intracorporate conspiracy doctrine for the § 1983 and § 1985 claims.

In addition, Plaintiff has failed to allege that the conspiracies were in any way motivated by "racial or . . . otherwise class-based, invidious discriminatory animus." *Mian*, 7 F.3d at 1088 (internal quotation marks omitted). Although Plaintiff alleges that at the time of his arrest, NYPD officers, including Williams, were "acting on defendant City of New York official

---

Assistant District Attorney Erin O'Brien's Motion to Dismiss Pursuant to Federal Rule 12(b)(6), filed September 28, 2017. (Doc. 46.)

policies and customs of arresting individuals of African American decent [sic] and manufacturing false evidence against individuals on the pretext of being involved in illegal activities," (SAC ¶ 15), this statement is conclusory and devoid of any factual support, and Plaintiff provides no evidence suggesting that Williams or the DA Defendants were acting with discriminatory animus with respect to the alleged conspiracies surrounding his arrest and prosecution.  Therefore, all of Plaintiff's § 1985 conspiracy claims fail, and the DA Defendants' and City Defendants' motions to dismiss with respect to Plaintiff's § 1985 conspiracy claims are also granted in light of Plaintiff's failure to plausibly allege racial discriminatory animus.

Plaintiff contends that Williams and the DA Defendants conspired to (1) falsify and tamper with documents and (2) arrest Plaintiff on false charges in violation § 1983 by depriving him of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.  (*See* SAC ¶¶ 117–25.)  With regard to the alleged conspiracies between the DA Defendants and Williams, I find that the intracorporate conspiracy doctrine does not apply, since the DA Defendants and Williams represent separate entities—as employees of the New York County District Attorney's Office and the New York City Police Department, respectively, the DA Defendants are employees of the state and Williams is an employee of the City.  *See Dunlop v. City of New York*, No. 06 Civ. 0433(RJS), 2008 WL 1970002, at *13–14 (S.D.N.Y. May 6, 2008) (denying motion to dismiss conspiracy claim between New York County District Attorney's Office and the New York City Police Department based upon the intracorporate conspiracy doctrine); *see also Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.").  However, Plaintiff fails to plausibly allege that Williams and the DA Defendants conspired with one another to inflict an unconstitutional injury and that the conspiracy created an

"actual violation of constitutional rights" as necessary to sustain a § 1983 conspiracy action. *See Singer*, 63 F.3d at 119. Because all of Plaintiff's claims alleging an actual violation of his constitutional rights have been dismissed, as detailed above, Plaintiff's § 1983 conspiracy claims are similarly dismissed. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (dismissing the plaintiff's conspiracy claims where he could not establish an actual violation of his constitutional rights through claims for false arrest or use of excessive force); *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 627 (S.D.N.Y. 2015) ("Because none of plaintiff's claims alleging an actual violation of is constitutional rights remain against [the defendant], his conspiracy claims are similarly subject to dismissal.").

### E.    *Failure to Intervene*

#### 1.  **Applicable Law**

A failure to intervene claim is grounded in the rule that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "Liability only attaches if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246(SAS), 2012 WL 987592, at *5 (S.D.N.Y. Mar. 23, 2012) (quoting *Tavares v. City of New York*, No. 08 Civ. 3782(JSR)(JCF), 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010)). A plaintiff's allegations may not be vague or conclusory, *see id.* at *7, and whether it succeeds or fails depends on whether the plaintiff successfully alleges an underlying constitutional violation, *see Henry-Lee v. City of New York*,

746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) ("An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983.").

### 2. Application

Plaintiff alleges that the DA Defendants and City Defendants failed to intervene and thus should be held liable. (*See* SAC ¶¶ 131–38.) Plaintiff's failure to intervene claim fails as a matter of law because he has not established an underlying constitutional violation. As there is no predicate violation of Plaintiff's constitutional rights, his failure to intervene claim is dismissed and the motions of the DA Defendants and City Defendants to dismiss with respect to the failure to intervene claims are granted.

### F. *Municipal Liability*

#### 1. Applicable Law

Because the language of § 1983 makes clear that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort," a municipality "cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691. In order to succeed on a claim against a municipality under § 1983 based on acts of government officials, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Thus, a plaintiff must establish a violation of his constitutional rights in order to succeed in a claim for municipal liability. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986).

When determining whether municipal liability applies, a court must "conduct a separate

inquiry into whether there exists a 'policy' or 'custom.'" *Cowan*, 95 F. Supp. 3d at 637 (quoting *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003)).  In order to prevail, a plaintiff must allege one of "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  A plaintiff cannot show a "policy" or "custom" sufficient to impose municipal liability merely by providing "[p]roof of a single incident of unconstitutional activity . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Okla. v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Cowan*, 95 F. Supp. 3d at 637 ("Generally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (internal quotation marks omitted)).

Further, a "[p]laintiff must . . . prove a causal link between the policy, custom or practice and the alleged injury in order to find liability against a municipality." *Brandon*, 705 F. Supp. 2d at 277; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Accordingly, in order to survive a motion to dismiss, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529,

540 (S.D.N.Y. 2015) (internal quotation marks omitted).

## 2. Application

Plaintiff's Second Amended Complaint asserts that the City should be held liable because it has "customs, policies, practices, ordinances and regulations" that has deprived him of his constitutional rights, including "[w]rongfully arresting individuals," "manufacturing evidence against individuals," "unlawfully searching detainees," "arresting innocent persons in order to meet 'productivity' goals," and "wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so."[12] (*See* SAC ¶¶ 144–45.) As an initial matter, Plaintiff has failed to demonstrate an underlying constitutional violation with respect to the June 5 Burglary, as I have dismissed all of his other claims. Thus, his municipal liability claim must also fail. *See Cowan*, 95 F. Supp. 3d at 636; *see also Martinez v. City of New York*, 340 F. App'x 700, 702 (2d Cir. 2009) (summary order) ("Because the arresting officers in this case did not violate plaintiff's constitutional rights, there can be no municipal liability even if plaintiff had alleged a specific policy or custom that led to his detainment.").

---

[12] In their reply memorandum, the City Defendants claim that Plaintiff appears to raise an argument for municipal liability based on the City's failure to train for the first time in his opposition. (*See* City Defs. Reply 8; *see generally* Pl.'s Opp.) Although a plaintiff typically cannot amend a complaint through claims raised for the first time in an opposition, because of Plaintiff's pro se status I will "read the facts alleged . . . for whatever claims may properly be based on such facts." *Finch v. New York*, No. 10 CV 9691(VB), 2012 WL 2866253, at *8 (S.D.N.Y. May 30, 2012); *see also Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14-cv-675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (holding in connection with a pro se plaintiff's motion that "to the extent claims alleged for the first time in motion papers could have been asserted based on the facts alleged in the complaint, they should be considered"). To the extent that the facts in the Second Amended Complaint allege municipal liability based on failure to train, I find that Plaintiff offers only conclusory allegations. He does not provide any facts detailing a municipal training program causing a "pattern of similar constitutional violations by untrained employees" as necessary to make out a failure to train claim. *See Simms v. City of New York*, 480 F. App'x 627, 629–30 (2d Cir. 2012) (summary order) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011))). "City Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Pursuant to FRCP 12(B), filed November 17, 2017. (Doc. 62.) "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition of Cyrus Vance, Jr. and Erica O'Brien's Motion to Dismiss Pursuant to Federal Rule 12(b)(6), filed October 20, 2017. (Doc. 54 Ex. 1.)

In addition, the Second Amended Complaint does not sufficiently allege an official policy or custom, as it only contains conclusory allegations that the City has a policy or practice of wrongfully arresting, searching, and brutalizing individuals or manufacturing evidence against them.  *See Kucharczyk*, 95 F. Supp. 3d at 540 ("[C]onclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details.").  The only specific allegations contained in the Second Amended Complaint relate to Plaintiff's arrest and the June 5 Burglary charges, and are not sufficient to establish municipal liability.  *See Cowan*, 95 F. Supp. 3d at 637.  Thus, Plaintiff fails to state a claim of municipal liability, and the City Defendants' motion to dismiss with respect to this claim is granted.

### G.     *State Law Claims*

Plaintiff also brings state law claims pendent to, and based on, the same facts as his federal law claims.  Plaintiff's state law claims for malicious prosecution and abuse of process, which are governed by the same standard as its federal counterparts, are dismissed with prejudice as detailed above.  With respect to Plaintiff's reference to New York law in his denial of a right to a fair trial claim, his conspiracy claims, and his failure to intervene claims, to the extent that Plaintiff's factual allegations are sufficient to state claims for violations of New York state law, I decline to exercise jurisdiction over them for the reasons described below.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law

claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Indeed, "when federal claims are dismissed early in the litigation . . . dismissal of state law claims is appropriate." *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ.3608IWK), 2002 WL 1561126, at *3 (S.D.N.Y. July 15, 2002) (internal quotation marks omitted). Having dismissed all of Plaintiff's claims over which I had original jurisdiction as well as state law claims governed by the same standard, I decline to exercise jurisdiction over Plaintiff's pendent state law claims to the extent that his factual allegations give rise to them. Accordingly, those claims are dismissed.

### H. *Leave to Replead*

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "[I]t is within the sound discretion of the court whether to grant leave to amend." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)). Generally, when courts grant a motion to dismiss, amendments are favored because they "tend to facilitate a proper decision on the merits." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks omitted). Thus, a plaintiff is typically granted leave to amend in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed . . . or futility of amendment." *Alcon*, 719 F. Supp. 2d at 281–82 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Given that I have provided Plaintiff with multiple opportunities to amend his complaint, I find that it would be futile to allow Plaintiff to amend once more. *See Best v. City of New York*, No. 12 Civ. 7874(RJS)(SN), 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) ("Plaintiff has been given ample opportunity to amend his pleadings and the Court can only afford him so many

bites at the apple."); *Dyson v. N.Y. Health Care, Inc.*, 353 F. App'x 502, 503–04 (2d Cir. 2009) (summary order) (affirming a district court's dismissal of a third amended complaint where "the district court afforded [the plaintiff] three opportunities to file an amended complaint" but "despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief"). Accordingly, Plaintiff is denied leave to amend the Second Amended Complaint.

**V.  <u>Conclusion</u>**

Because Plaintiff failed to plausibly allege claims against the DA Defendants and City Defendants, their motions to dismiss are GRANTED in their entirety, and Plaintiff's claims are dismissed with prejudice as to all of his § 1983 and § 1985 claims as well as all state law claims analyzed under the same standard. To the extent that Plaintiff's allegations in the Second Amended Complaint can be construed to give rise to additional state law claims, I decline to exercise jurisdiction over these claims and they are dismissed without prejudice to filing those claims in state court.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue). The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to the pro se Plaintiff and enter judgment for Defendants.

SO ORDERED.

Dated: June 4, 2018
       New York, New York

Vernon S. Broderick
United States District Judge